ENAMELED METALS CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19011. Promulgated January 17, 1929.

*S. Leo Ruslander, Esq.*, for the petitioner.
*H. LeRoy Jones, Esq.*, for the respondent.

1396

OPINION.

Phillips: The first ground urged by the petitioner is that the respondent computed its profits tax for 1917 under the provisions of section 210 of the Revenue Act of 1917; that the petitioner's situation

was the same in 1918 as it was in 1917, and that the respondent was therefore in error in refusing to compute its profits tax for 1918 under sections 327 and 328 of the Revenue Act of 1918, which superseded section 210 of the Revenue Act of 1917; that the only ground for computing tax under section 210 of the Revenue Act of 1917 is that the invested capital can not be determined and that if this be so for 1917 it must be equally true for 1918. It is a matter of official record, disclosed in hearings before congressional committees, that in practice the Commissioner did not limit the application of section 210 of the Revenue Act of 1917 to the single situation there set out, but broadened the application to cover such situations as are described in section 327 of the Revenue Act of 1918. In such circumstances it does not follow that section 210 was applied to 1917 by the Commissioner because he was unable to determine the invested capital of the petitioner. It may have been applied for any one of a number of reasons. Such application may have been proper or erroneous. Granting relief in 1917 can not be accepted as proof that error was committed in denying relief in 1918.

The next contention of the counsel for petitioner is that the Commissioner is unable to determine petitioner's invested capital because there were in prior years a large number of expenditures for capital items which had been written off the books and never restored. The amounts so expended are set out in our findings of fact and we see no insuperable difficulty to the establishment of the facts which would be necessary to permit a determination of the part which each of such expenditures should play in the computation of the invested capital for the taxable year. The petitioner does not establish the impossibility of determining invested capital by showing that certain items have been excluded, even assuming that such items should have been included in the computation. The petitioner's relief in such circumstances is to establish its correct invested capital; not to seek the application of section 328 on the ground that its invested capital can not be determined.

Petitioner further claims that there were abnormal conditions which affected its capital and income. To establish this it relies upon its inability to include in invested capital any amount for a lease from Spang-Chalfant & Co., and any amount for good will, and also upon its business and credit relations with Spang-Chalfant & Co. Insofar as the lease is concerned, it appears that the Commissioner determined a March 1, 1913, value of $66,757.68, for which a deduction for exhaustion was allowed in computing net income. Without questioning petitioner's claim that the lease was valuable or that it had good will, for neither of which any value was allowed in invested capital, we are nevertheless of the opinion that no suffi-

cient showing of abnormality has been made. Petitioner was using in its business, which was that of manufacturing, some $360,000 in other assets, which it has been allowed to include in the computation of its invested capital. Neither the leasehold nor its good will was acquired by the expenditure of any money and neither represented anything which had been risked in the business by petitioner or its stockholders. Where the item excluded has been the principal income-producing factor and primarily responsible for the production of the income of the taxpayer, we have not hesitated to say that an abnormal situation existed. *Clarence Whitman & Sons*, 11 B. T. A. 1192. But it does not follow that every time an asset is excluded from invested capital there results an abnormality within the meaning of section 327 of the Act. *Morris & Co.*, 1 B. T. A. 704. In many businesses there will be some good will, or some appreciation in the value of the assets, or some other factor which can not enter into the computation of invested capital. The exclusion must be such as to cause exceptional hardship.

The proximity of the petitioner's plant to that of Spang-Chalfant & Co. enabled it to secure its raw material upon very short notice, wherefore it was unnecessary for petitioner to carry any substantial inventory. It also purchased its supplies from Spang-Chalfant & Co. upon credit terms which enabled it to ship its finished product to its customers and receive the purchase price from them before it became liable to pay Spang-Chalfant & Co. The petitioner's witnesses estimate that if the petitioner had been situated farther from a source of supply of its raw materials and had been required to pay for its goods upon the usual credit terms, it would have required from $300,000 to $350,000 more capital. These favorable conditions may indicate good management and may have resulted in substantially larger income than could have been hoped for under less favorable conditions, but in our opinion they do not create abnormalities in either the capital or income. Section 327 of the Act expressly provides that it shall not apply to any case in which the tax is high merely because the corporation earns a high rate of profit upon a normal invested capital. The record leads us to believe that this was the situation of the petitioner. No two businesses can be alike in all their factors. Each is bound to have certain favorable or unfavorable conditions as compared with others. It was not to such things as these that Congress had reference in the use of the word abnormalities in section 327, but rather to those situations where by reason of some peculiarity in the corporate structure, invested capital was unusually small as compared with the total capital employed in the business or income was affected by some unusual circumstance.

*Pittsburgh Supply Co.*, 14 B. T. A. 620. Here none of such circumstances existed.

Petitioner further alleges that its situation is abnormal because it is a member of an affiliated group and the corporations associated with it have operating deficits which have been offset against earned surplus. Section 240, Revenue Act of 1918. Without considering whether or not this could ever constitute an abnormality, since it is the income and invested capital of the consolidation which is to be considered, it is sufficient in this case to point out that while petitioner's invested capital was reduced by the operating deficit of its subsidiaries it, nevertheless, had the benefit of the remainder of their invested capital and at the same time was allowed to reduce its own profit by the amount of the loss of the affiliated corporations. It is by no means clear that the petitioner suffered by reason of the affiliation; it would perhaps be more justifiable to conclude that its tax would have been greater had there been no affiliation.

*Decision will be entered for the respondent.*